**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**DERRICK L. WYCHE,**

       **Petitioner,**

**vs.**                          **Case No. 4:10cv42-SPM/WCS**

**WALTER McNEIL,**

       **Respondent.**

_____/


## REPORT AND RECOMMENDATION TO DISMISS § 2254 PETITION

Petitioner Wyche, proceeding pro se, filed a petition for writ of habeas corpus

pursuant to 28 U.S.C. § 2254 and supporting memorandum. Docs. 1-2. Pursuant to

court order, doc. 5, the filing fee was paid. Petitioner filed a motion to appoint counsel,

doc. 3, which is denied by separate order.

There is a one year limitations period for filing a § 2254 petition, which generally

runs from the date on which the judgment at issue became final by conclusion of direct

review or the expiration of time for seeking direct review. § 2244(d)(1). Later dates

commencing the period are the date on which an unconstitutional impediment which

prevented the applicant from filing is removed; the date on which the right asserted was

recognized by the Supreme Court and made retroactive on collateral review; or the date on which the factual predicate for the claim could have been discovered by due diligence. § 2244(d)(1)(B)-(D).

Once commenced, the period is tolled for the time during which a "properly filed" application for relief is pending in state court. § 2244(d)(2)(e). The time may also be equitably tolled, but "only if a petitioner establishes *both* extraordinary circumstances and due diligence." Diaz v. Secretary for Dept. of Corrections, 362 F.3d 698, 702 (11th Cir. 2004) (citation omitted, emphasis in original).

Petitioner challenges his 2003 conviction out of the Second Judicial Circuit, Leon County, for robbery with a weapon and false imprisonment by use of a firearm. Doc. 1, p. 1. He was sentenced to concurrent terms of 30 years and 15 years. *Id.* He asserts that his conviction was affirmed in Wyche v. State, 911 So.2d 1282 (Fla. 1st DCA 2005), and that he did not seek rehearing or file a petition for writ of certiorari. *Id.*, p. 2. The date of the opinion was October 6, 2005, so his conviction became final on January 4, 2006, when the 90 days for filing a petition for writ of certiorari expired. *See* McCloud v. Hooks 560 F.3d 1223, 1227 (11th Cir. 2009) (citations omitted). Petitioner therefore had to either file a proper tolling motion in state court or a § 2254 petition no later than January 4, 2007.

Petitioner asserts that he filed a FLA.R.CRIM.P. 3.850 motion on April 6, 2007. Doc. 1, p. 2. By this time, however, there was no time remaining to be tolled. *See* Tinker v. Moore, 255 F.3d 1331, 1333, 1335 an n. 4 (11th Cir. 2001), *cert. denied*, 534 U.S. 1144 (2002) (involving a Florida prisoner and Rule 3.850 motion). Petitioner's Rule 3.850 motion was denied and the denial affirmed on appeal on June 3, 2008. Doc. 1, p.

3 (referencing case number 1D07-4729).[1]  According to the state court's docket, the

Florida Supreme court denied or dismissed Petitioner's notice of discretionary

jurisdiction, and the last activity in that case was denial of Petitioner's motion to recall

mandate on July 16, 2008.  Petitioner indicates no other post conviction motions filed in

state court.  This § 2254 petition was filed on February 1, 2010 (the date delivered to

prison officials for mailing), some eighteen months after the Rule 3.850 appeal was

concluded in state court.

Though the issue of tolling is different from the issue of procedural default in

state court, Petitioner asserts that his claim may be brought "under the 'miscarriage of

justice' exception to procedural default."  Doc. 1, p. 7 of separate factual statement (doc.

1, p. 17 as scanned in ECF) (electronic case filing).  *See* Coleman v. Thompson, 501

U.S. 722, 750, 111 S.Ct. 2546, 2565, 115 L.Ed.2d 640 (1991) (in case of a procedural

default, "federal habeas review of the claims is barred unless the prisoner can

demonstrate cause for the default and actual prejudice as a result of the alleged

violation of federal law, or demonstrate that failure to consider the claims will result in a

fundamental miscarriage of justice."); McCleskey v. Zant, 499 U.S. 467, 494-95, 111

S.Ct. 1454, 1470-71, 113 L.Ed.2d 517 (1991) (miscarriage of justice exception applies

only to extraordinary cases where a constitutional violation has probably resulted in

conviction of an innocent person).  *See also* House v. Bell, 547 U.S. 518, 536-538, 126

S.Ct. 2064, 2076-77, 165 L.Ed.2d 1 (2006) (discussing Schlup v. Delo, 513 U.S. 298,

---

[1] According to the docket in 1D07-4729 (available online at www.1dca.org), this was the date of the mandate.

115 S.Ct. 851, 130 L.Ed.2d 808 (1995), and the prisoner's burden in establishing actual innocence as a "gateway" to habeas corpus review of a procedurally defaulted claim).

Petitioner Wyche concedes that his § 2254 petition is untimely, "but contends he had made a colorable showing that his incarceration is the result of a constitutional violation that undermined the integrity of the criminal tribunal itself and probably has resulted in [conviction of] one who is actually innocent." Doc. 1, p. 7 of separate factual statement (doc. 1, p. 17 as scanned in ECF).

> Petitioner contends that the constitutional error alleged, if proven, would undermine "the structural integrity of the criminal tribunal itself," rendering the results of the entire trial process unreliable and unconstitutional, resulting in the incarceration of an otherwise innocent man and fundamental miscarriage of justice. Until a court make[s] a factual determination (which requires an evidentiary hearing) of whether or not Petitioner's 14th Amendment Due Process rights [were] violated when law enforcement failed to preserve potentially useful evidence, the ends of justice will not [have] been met in the instant case and Petitioner's incarceration will remain illegal, unconstitutional, a miscarriage of justice and contrary to clearly established law.

Doc. 2 (memorandum), p. 2 (p. 5 of the document as scanned in ECF). This "potentially useful evidence" is discussed ahead.

That actual innocence would allow untimely filing is a shorthand way of claiming that the limitations period would violate the Suspension Clause if applied to a petitioner who is actually innocent. *See* Johnson v. Florida Dep't of Corrections, 513 F.3d 1328, 1333 (11th Cir. 2008) (argument that untimely petition should be permitted due to actual innocence construed as claiming the "one-year limitations period violates the Suspension Clause when an otherwise time-barred petitioner can show he is actually innocent."). It is question which has not yet been decided by the Eleventh Circuit, because no time-barred petitioner has yet to make the requite showing of actual

innocence to trigger Suspension Clause analysis. *Id.* (citations omitted). *See also* Melson v. Allen, 548 F.3d 993, 1002 (11th Cir. 2008), *cert. denied*, __ U.S. ____, 130 S.Ct. 254, 175 L.Ed.2d 173 (2009) (citing Johnson).

"'[A]ctual innocence' means factual innocence, not mere legal insufficiency." Johnson, 513 F.3d at 1334, *quoting* Bousley v. United States, 523 U.S. 614, 623, 118 S.Ct. 1604, 1611, 140 L.Ed.2d 828 (1998). Petitioner must demonstrate new reliable evidence (or alternatively, a new interpretation of law) which now makes it more likely than not that no reasonable juror would have found guilt beyond a reasonable doubt. Melson, 548 F.3d at 1002 (citing Schlup); Johnson, 513 F.3d at 1334 and n. 10 (citing Schlup, other citations omitted).[2]

The "potentially useful evidence" claimed by Petitioner, to support both his constitutional claim and his actual innocence claim, is a transaction receipt. According to Petitioner, the evidence was that immediately before the robber entered the Easy Mail store on November 13, 2002, a Ms. Kantzler was making a transaction with an Easy Mail employee, Ms. Fox, a transaction which was interrupted by the robber pointing a gun at Fox and demanding money. Doc. 1, attached pp. 1 (p. 11 in ECF); doc. 2, p. 6 (p. 9 in ECF). The receipt was handed over with the money to the robber, who was not wearing gloves, and was either dropped or discarded in the parking lot. *Id.* Petitioner asserts that the receipt would have had the time and date on it, and that *if*

---

[2] In Johnson the petitioner did not offer new evidence, which Schlup suggested was necessary, but relied on a new interpretation of the burglary statute, which was consistent with Bousley. 513 F.3d at 1334-35, n. 10. Whether new law could be the basis of a proper actual innocence claim was deemed unnecessary to decide, as the claim failed anyway. *Id.*

there was a fingerprint not belonging to Fox or Petitioner on it, then that would have pointed to the "true suspect," and "eliminated Petitioner as the person who committed the robbery."  Doc. 2, pp. 6-7 (pp. 9-10 in ECF).

The constitutional claim raised by Petitioner is that law enforcement acted in bad faith in failing to collect or retain this piece of evidence, in order to gain a tactical advantage at trial.  Doc. 2, pp. 5-9 (pp. 8-12 in ECF), *relying on* Arizona v. Youngblood, 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988).  Petitioner asserts that "if properly preserved, tested and found favorable to Petitioner," the receipt "alone would have overcome all of the state's evidence to where no reasonable factfinder (jury) could have found Petitioner guilty beyond a reasonable doubt and thereby, exculpate Petitioner." *Id.*, p. 6 (p. 9 in ECF).

> Petitioner is very much aware that his allegation infers that law enforcement did recover the receipt, tested it and the results were favorable to Petitioner, and because of the then known exculpatory power that such evidence would possess, it was lost and/or destroyed in order to gain a tactical advantage at trial, could be considered "speculative" in manner.

*Id.*, p. 7 (p. 10 in ECF).

Petitioner "substantiates" his claim by alleging that all other evidence was collected and preserved yet the receipt was not, arguing that it was the most important and only evidence that could have exonerated him.  *Id.*  He claims it is implausible that the receipt was photographed and yet not collected as evidence.  *Id.*  He claims a contradiction in testimony as the forensic specialist Maltese (formerly Lockwood) said she was not aware of the receipt, nor did she collect it, yet she actually took a photograph of it.  *Id.*, p. 8 (p. 11 in ECF).  This was also contradicted, Petitioner claims,

by the testimony of Officer Baldwin, who said Maltese collected all of the evidence.

Doc. 1, p. 2 (p. 12 in ECF). Baldwin recalled seeing a receipt on the ground, but when

asked if Maltese took it into evidence, Baldwin said she did not know what she took. *Id.*,

p. 3 (p. 13 in ECF). Petitioner claims the receipt was listed in discovery as tangible

evidence known to the prosecution, but was never provided to the defense. *Id.*, pp. 3-4

(pp. 13-14 in ECF), referencing Ex. I. Petitioner alleges that the "conflicting deposition

testimony and suspicious behavior (conduct) pertaining to the receipt's existence" of

Maltese and Baldwin support his claim of bad faith. *Id.*, pp. 5-6 (pp. 15-16 in ECF).

Petitioner also points to an internal affairs report by the Tallahassee Police

Department regarding another robbery, as adding credibility to his claim of bad faith.

Doc. 1, p. 6 (p. 16 in ECF, referencing Ex. N).[3]

Petitioner's substantive claim is governed by <u>Youngblood</u>. In <u>Youngblood</u>, the

Court noted that, while good or bad faith of the state is irrelevant where there is a

<u>Brady</u>[4] claim, the rule is otherwise if the evidence merely "could have been subjected to

---

[3] Ex. N is attached to doc. 1 (see pp. 24-55 in ECF) (hereafter TPD report, followed by the report page number). In that investigation the trial was to be held on March 7, 2006, and the cash (some $10,000) taken in the robbery was to be introduced in evidence. TPD report, p 2. Of all of the money, only one $20 bill had the accused's fingerprint on it, and the bill was digitally scanned and charts and photos prepared for visual presentation to the jury. *Id.* Before it was to be taken to trial the bill itself was left by Maltese on the chair of another forensic specialist to obtain a signature, as a fingerprint identification requires two signatures. *Id.* After breaking for lunch the bill was found to be missing. *Id.* The forensic unit was searched, and members of the unit submitted to voluntary personal searches. *Id.*, pp. 2-3. The $20 bill was never recovered, and (as reflected in the report) the area was not well secured. To the extent this report might be relevant here is fails to show anything beyond negligence.

[4] <u>Brady v. Maryland</u>, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). <u>Brady</u> held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to

tests." 488 U.S. at 58, 109 S.Ct. at 337. In the latter case, "unless a criminal defendant can show bad faith on the part of police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." 488 U.S. at 57-58, 109 S.Ct. at 337. *See also* Illinois v. Fisher, 540 U.S. 544, 547, 124 S.Ct. 1200, 1202157 L.Ed.2d 1060 (2004) (discussing Brady and Youngblood). The applicability of the bad faith requirement is not based on the importance of the evidence to the prosecution or defense, "but on the distinction between 'material exculpatory' evidence and 'potentially useful' evidence." 540 U.S. at 549, 124 S.Ct. at 1203 (quoting Youngblood). Petitioner asserts that, unlike the offenders in Youngblood and Fisher, he has adequately alleged bad faith and the record shows that the police were not acting in compliance with normal procedure (which required that all physical evidence be collected) in failing to retain the receipt. Doc. 2, pp. 13-14 (p. 16-17 in ECF).

But the issue here is whether this court can reach this substantive claim. That issue depends upon a showing of actual innocence or one of the statutory exceptions to the one year period. There is no new evidence (or new interpretation of law to change the analysis of existing evidence) on which Petitioner may rely to support his actual innocence claim. If Petitioner could prove – even with new evidence – that law enforcement officers acted in bad faith by failing to retain or by destroying evidence *potentially* useful to him, he would, at best, only establish a due process violation as discussed in Youngblood.

---

punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87, 83 S.Ct. at 1196-97.

And even if all that Petitioner assumes is true, actual innocence would not necessarily be shown. Another person might have touched the blank paper upon which the receipt was printed, before the transaction took place. The evidence as to how the receipt was handed to the robber and by whom is unclear, so it is unclear as to whose fingerprints might have been on the receipt. It could have been Fox, as she handed over the money from her register, or it could have been Kantzler, who handed over money from her wallet to the robber. Doc. 1-1, p. 25. Had the receipt been handed to the robber between bills, a fingerprint on the receipt from the robber would have been unlikely.

But we will never know as the receipt was never tested for fingerprints. At best, the receipt has been shown to be only theoretically exculpatory, and that does not show actual innocence. As noted by the Eleventh Circuit in Melson, in House the petitioner had substantial evidence pointing to a different suspect *and* new DNA and forensic evidence undermining central proof in the case, yet even then the issue was considered "close" by the Supreme Court. 548 F.3d at 1003-04 (citations to House omitted). The petitioner in Melson, on the other hand, produced conflicting statements purporting to establish two different alibis. *Id.* It was not the rare case showing actual innocence. *Id.* Petitioner Wyche has not presented any new evidence at all, and there is no evidence that the receipt was in fact exculpatory.

Case No. 4:10cv42-SPM/WCS

It is therefor respectfully **RECOMMENDED** that the 28 U.S.C. § 2254 petition,

doc. 1, challenging Petitioner's 2003 conviction and sentence for robbery with a weapon

and false imprisonment by use of a firearm, imposed by the Second Judicial Circuit,

Leon County, be **DISMISSED** as untimely.

**IN CHAMBERS** at Tallahassee, Florida, on April 13, 2010.


s/     William C. Sherrill, Jr.
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 14 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**

Case No. 4:10cv42-SPM/WCS